528 S.E.2d 82

**Jean B. VAUGHN, as Personal Representative of the Estate of Mary Henrietta Bernhardt, Deceased, Respondent,**

v.

**John R. BERNHARDT, Appellant.**

**No. 3114.**

Court of Appeals of South Carolina.

Heard Dec. 7, 1999.

Decided Feb. 7, 2000.

Rehearing Denied April 1, 2000.

---

126

Harold P. Threlkeld, of Anderson, for appellant.

Steven C. Kirven, of Watkins, Vandiver, Kirven, Gable & Gray, of Anderson, for respondent.

HOWARD, Judge:

Jean B. Vaughn brought this action as personal representative of the estate of Mary Henrietta Bernhardt, deceased, to recover funds John R. Bernhardt withdrew from joint survivorship accounts held with the deceased. John was the nephew of Mary Henrietta Bernhardt, and withdrew the funds seven days prior to her death. The accounts were opened by the

deceased naming John as a joint party having a right of survivorship. She was the sole contributor of the funds.

The case was submitted to the probate court based upon stipulated facts, and the court found that the funds belonged to the estate of Mary Henrietta Bernhardt. The court ruled that the statutory presumption of entitlement to funds under S.C.Code Ann. § 62–6–104(a) (1987) which John would have had as the sole surviving party to each joint account only applied to sums on deposit in joint survivorship accounts at the death of the contributing party. The court ruled that because John withdrew the funds before his aunt's death, he was not entitled to the presumption. The court ordered him to repay the estate, less funds he used to pay funeral and other related expenses. The circuit court affirmed the probate court. John appeals. We affirm.

## FACTS

Several years prior to her death, Mary Henrietta Bernhardt opened several joint bank accounts, certificates of deposit, and investments containing right of survivorship provisions, which she titled in her name and that of her nephew, John. On June 7, 1995, she was admitted to St. Francis Hospital where she remained until her death on June 22, 1995. She was eighty-two years old when she died.

On June 15, 1995, John transferred all of the funds from the accounts to a new account(s) titled in his name alone. The funds in the joint accounts were contributed solely by his aunt. There is no indication she participated with or consented to John's transfer of the funds to the new account(s).

After his aunt died, John withdrew $5000 from the new account(s) to settle her funeral expenses. Vaughn, as personal representative of the estate, demanded the balance of the funds. Upon John's refusal, Vaughn brought this action.

## DISCUSSION

■ The issue on appeal is whether the funds withdrawn by John prior to his aunt's death belong to him as a result of the joint accounts having right of survivorship, or become the property of the estate by virtue of their withdrawal prior to

his aunt's death. John asserts the probate court erred in concluding that he was not entitled to a presumption of an *inter vivos* gift to him by the establishment of the account, or ownership by virtue of a presumption of entitlement upon the death of his aunt under the right of survivorship provisions contained within each joint account.

■■■■ As the essential character of the cause of action is for the recovery of money, we conclude the action is at law. *See NationsBank of South Carolina v. Greenwood,* 321 S.C. 386, 392, 468 S.E.2d 658, 662 (Ct.App.1996) ("The determination of the standard of review by an appellate court of matters originating in the probate court is controlled by whether the cause of action is at law or in equity. To make this determination, the appellate court must look to the essential character of the cause of action alleged by the petitioners in the court below."); *Gilford v. South Carolina Nat. Bank,* 257 S.C. 374, 186 S.E.2d 258, (1972) (issue of ownership between joint account survivor and heirs is an issue at law and not equity); *In re Tollison,* 320 S.C. 132, 463 S.E.2d 611 (Ct.App.1995) (petition in probate court for money damages is an action at law). Where the essential nature of the cause of action is legal, the action to be taken by the reviewing court is controlled by its determination of whether or not there is any evidence to support the factual findings of the court below. *Id.*

South Carolina Code Ann. § 34–11–10 (Supp.1998) provides, "when a deposit has been made in a bank ... in the names of two or more persons, ... the deposit or any part thereof may be paid to any of the persons, whether the other or others are living or not...." Prior to the amendment of this provision, our supreme court interpreted this section to give rise to a rebuttable presumption upon the creation of a joint survivorship account that account funds are intended to be a gift to the surviving account holder. *Johnson v. Herrin,* 272 S.C. 224, 250 S.E.2d 334 (1978). John argues the probate court erred by failing to apply this presumption.

■■ However, in 1990 the legislature amended section 34–11–10, making it "subject to" the provisions of sections 62–6–101, et. seq., of the Probate Code. S.C.Code Ann. § 34–11–10 (Supp.1998); *Estate of Chappell v. Gillespie,* 327 S.C. 617, 491

S.E.2d 267 (Ct.App.1997). The rights of parties [1] to a multiple-party account are governed by the provisions of the Probate Code contained in S.C.Code Ann. §§ 62–6–101, et seq. (1987). The Probate Code provides, "[a] joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." S.C.Code Ann. § 62–6–103(a) (1987). The Probate Code further provides a presumption of survivorship, stating in pertinent part: "[s]ums *remaining on deposit* at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is a writing filed with the financial institution at the time the account is created (or subsequently as provided under § 62–6–105) which indicates a different intention." S.C.Code Ann. § 62–6–104(a) (1987) (emphasis added).

 Under the Probate Code, the presumption created in favor of the non-contributing survivor to a joint account only applies to those funds *remaining on deposit* at the death of the contributor. S.C.Code Ann. § 62–6–104(a) (1987). As the probate court recognized, when the funds have been withdrawn before the death of the contributing party, there are no funds on deposit to which the presumption may apply.

 Our probate code is equally clear in stating that funds placed in a joint account with right of survivorship remain the property of the contributing party until that party's death, unless there is clear and convincing evidence of a different intent. S.C.Code Ann. § 62–6–103(a) (1987). Consequently, no inference can be drawn from the mere fact a joint account was established that the contributing party intended to make an immediate gift of the funds to the non-contributing party. Nor can the inference of an *inter vivos* gift be taken from the mere maintenance of the joint account once established, because the law presumes that it remains the property of the contributing party during that party's lifetime absent clear and convincing evidence to the contrary. This is so, notwithstanding the fact that the non-contributing party has legiti-

---

1. " 'Party' means a person who, by the terms of the account, has a present right, subject to request, to payment from a multiple-party account." S.C.Code Ann. § 62–6–101(7) (1987).

mate access to the funds pursuant to S.C.Code Ann. § 34–11–10 (Supp.1998), because, as previously noted, the legislature amended § 34–11–10 to make it subject to the provisions of § 62–6–101, et. seq., of the Probate Code.

In reaching this conclusion, the probate court found support in *Shourek v. Stirling*, 621 N.E.2d 1107 (1993), an Indiana case with similar facts. We also find the reasoning of *Shourek* to be sound. In *Shourek*, a niece withdrew funds from a joint account shortly before her aunt's death. As in the present case, the aunt made all contributions to the joint account. The personal representative sought to recover the funds after the aunt's death. The Indiana court addressed provisions in the Indiana code similar to our Probate Code sections 62–6–103 and 104. The Supreme Court of Indiana held the funds in the account presumptively belonged to the aunt during her lifetime unless clear and convincing evidence of a contrary intent was established. The court found that for the statutory presumption of survivorship to apply, the funds must have remained on deposit when the aunt died. Since the niece withdrew the funds prior to her aunt's death, the court held the niece had to establish her entitlement to the funds without the benefit of the presumption. The court noted that although the deposit agreements gave the niece the right to withdraw funds from the account, the agreements did not create an ownership right in the funds that were withdrawn. The court remanded the case to the trial court to determine if an *inter vivos* gift had occurred. *Shourek v. Stirling*, 621 N.E.2d 1107 (1993).

Applying the reasoning of *Shourek* to this case, it is undisputed John withdrew the funds prior to his aunt's death. This action was well within his right, under the provisions of the account, section 34–11–10, and as a statutorily defined party under section 62–6–101(7). However, at the time of withdrawal, the presumption of ownership under section 62–6–103(a) enured to the benefit of his aunt as the sole contributor. At her death, there were no sums remaining on deposit. Therefore, the presumption of survivorship under section 62–6–104 was not triggered. John then had the burden of proving entitlement to the funds by establishing that his aunt intended an *inter vivos* gift or by establishing a proper testamentary disposition.

This case was tried in the probate court based upon a written stipulation of facts. Those facts are scant, providing nothing beyond that which is recited in this opinion. Having no further information upon which to base a decision, the probate court was well within the evidence in concluding that there was no clear and convincing proof of an *inter vivos* gift to John. Therefore, during her lifetime, Mary had a cause of action against John to recover the funds. *See Trotter v. First Federal Sav. and Loan Ass'n,* 298 S.C. 85, 378 S.E.2d 267 (Ct.App.1989) (noting joint account holder may have brought an action against other party to account to recover funds the second party withdrew). Her personal representative "has the same standing to sue and be sued in the courts of this State and the courts of any other jurisdiction as [her] decedent had *immediately prior to death.*" S.C.Code Ann. § 62-3-703 (1987) (emphasis added). We also conclude the probate court properly refused to apply a presumption of ownership through the survivorship provisions because there were no sums remaining on deposit in joint accounts at the death of Mary Henrietta Bernhardt.

■ We note however that our decision is limited to the facts of this case and does not address what evidence John could have presented to overcome the presumption of ownership during the lifetime of the parties as established under section 62-6-103(a). The Probate Code recognizes the parties' authority to contractually alter a statutory presumption. *See, e.g.,* S.C.Code Ann. § 62-6-104(a) (1987) (stating that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent *unless* there is a writing filed with the financial institution at the time the account is created ... which indicates a different intention." (emphasis added)). Therefore, the parties could have contractually altered the presumption of ownership under section 62-6-103(a). A provision in the instrument establishing a joint account indicating that each party is a co-owner or joint tenant is evidence tending to rebut the presumption that the parties intended ownership to remain solely with the contributing party. In the present case, however, the record omits any documentation surrounding the establishment of the joint account and provides no other evidence of an *inter vivos* gift. Accordingly,

we are constrained by the general presumption in section 62–6–103 and are compelled to reach this unfortunate result.

The court was correct in placing the burden of proof under these circumstances upon John to establish his entitlement to the funds, and the record sustains the court's conclusion that he did not carry that burden.

Accordingly, the order of the probate court is

**AFFIRMED.**

CURETON and HEARN, JJ., concur.